[Docket No. 17]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

CHERRY HILL TOWNE CENTER
PARTNERS, LLC,

        Plaintiff,

        v.

GS PARK RACING, L.P.,
GREENWOOD NEW JERSEY, INC.,
GREENWOOD RACING, INC.,

        Defendants.

Civ. No. 18-12868 (RMB/KMW)

**OPINION**

APPEARANCES:

BROWN & CONNERY, LLP
By:  William M. Tambussi, Esq.
     Mark P. Asselta, Esq.
     Andrew S. Brown, Esq.
360 Haddon Avenue
Westmont, New Jersey 08108
       *Counsel for Plaintiff*

BALLARD SPAHR LLP
By:  Roberto A. Rivera-Soto, Esq.
210 Lake Drive East-- Suite 200
Cherry Hill, New Jersey 08002
       *Counsel for Defendants*

**BUMB**, UNITED STATES DISTRICT JUDGE:

    Plaintiff, Cherry Hill Towne Center Partners, LLC ("Cherry

Hill Towne Center") would like to open and operate a sports

wagering facility on its property in New Jersey.  Problematic for

Plaintiff is the fact that its property is subject to a

Declaration of Restrictive Covenants ("Restrictive Covenant")
that runs to the exclusive benefit of Defendant GS Park Racing,
L.P. ("GSPR").[1]  The Restrictive Covenant provides, "Horse racing,
simulcasting, off-track betting, wagering activities and gambling
and gaming of any sort (collectively, 'Gaming') anywhere on the
GSP Property at any time by any party other than GSPR and its
successors and assignees is hereby prohibited ('Covenant')."
(Rivera-Soto Cert. Ex. C)

In this action, Cherry Hill Towne Center seeks a declaration
that the Restrictive Covenant is unenforceable, and asks this
Court to permanently enjoin GSPR from enforcing the restriction.
GSPR has responded by filing a Motion for Preliminary Injunction
asking this Court to enjoin Cherry Hill Towne Center "from and
against opening and operating a sports wagering lounge or
engaging in the business of sports wagering at or within the GSP
Property."  [Proposed Preliminary Injunction Order, Dkt. No. 17-
9]

For the reasons stated herein, the Court holds that GSPR
will likely prevail on its position that the Restrictive Covenant

---

[1]  The complaint names as Defendants three entities: GS Park
Racing, L.P.; Greenwood New Jersey, Inc.; and Greenwood Racing,
Inc.  The parties do not dispute that Greenwood New Jersey, Inc.
was dissolved in 2002 and no longer exists.  The parties' legal
analyses do not distinguish between GS Park Racing, L.P. and
Greenwood Racing, Inc.  For the purposes of this Opinion, "GSPR"
refers to GS Park Racing, L.P. and Greenwood Racing, Inc.
collectively.

is enforceable.  The Court will, however, deny the Motion for Preliminary Injunctive Relief because GSPR has not established that, absent provisional injunctive relief, immediate irreparable harm will result before this Court can render a final judgment on the merits.

## I.    BACKGROUND

On June 11, 2018 the New Jersey Sports Wagering Act of 2018, N.J.S.A. 5:12A-10 to -19, became effective.  Importantly for the instant case, the law does not allow sports wagering to take place just anywhere in the state.  Rather, the law allows sports wagering to occur only at "casinos" and "racetracks" that have obtained a sports wagering license.  N.J.S.A. 5:12A-11.  Cherry Hill Towne Center owns the property that was formerly Garden State Park ("the GSP Property"), where horse racing took place until 2001. (Rivera-Soto Cert. ¶ 10)  Because the Sports Wagering Act's definition of "racetrack" "includes any former racetrack," N.J.S.A. 5:12A-10, Cherry Hill Towne Center is eligible to apply for a sports wagering license.

Just 11 days after the Sports Wagering Act went into effect, on June 22, 2018, GSPR's attorney sent Cherry Hill Towne Center a letter, via certified mail, concerning the Restrictive Covenant. (Rivera-Soto Cert. Ex. E)  The letter stated in relevant part,

> GSPR is the beneficiary under that certain Declaration of Restrictive Covenants dated January 28, 1999. . . . . You are an owner of property subject to the Restrictive Covenants.

       For ease of reference, a copy of the Restrictive
Covenants is enclosed. . . .

     . . .

       In light of the recent enactment of sports wagering
legislation which applies to certain former racetracks
in New Jersey, and because you are the owner of record
of part of the [Garden State Park] Property, and
therefore, are subject to the restrictions set forth in
the Restrictive Covenants, we wanted to bring this
matter to your attention and inform you that GSPR
attaches significant importance and value to the rights
it holds under the Restrictive Covenants. Anticipating
that you would be interested in discussing this matter
with our client, our client will be happy to arrange a
meeting at your and our clients' mutual convenience.

(Id.)

    If Cherry Hill Towne Center responded to GSPR, the response

is not in the record before this Court. It would appear that,

rather than accepting GSPR's invitation to "discuss [the]

matter," Cherry Hill Towne Center raced to the courthouse and, on

June 31, 2018, filed this suit. The "Complaint for Declaratory

Judgment and Injunctive Relief" asserts two counts: (1)

"declaratory judgment invalidating the entirety of the

Declaration of Restrictive Covenants and for injunctive relief";

and (2) "declaratory judgment providing that the Declaration of

Restrictive Covenants does not prohibit sports wagering and for

injunctive relief." The complaint was filed in the Superior

Court of New Jersey, Chancery Division. GSPR timely removed on

the basis of diversity of citizenship.[2]   Thereafter, the parties
participated in private mediation, but they were unable to
resolve their disputes.

GSPR filed the instant Motion for Preliminary Injunction in
mid-December 2019.  After briefing was complete, the Court issued
a letter order directing the parties to submit supplemental
briefs addressing, among other things, the issue of Article III
ripeness.[3]  Supplemental briefing was recently completed.  The
parties' supplemental briefs state that Cherry Hill Towne Center
has not applied for a sports wagering license, however, Cherry
Hill Towne Center maintains that it "intends to do so as soon as
possible."  [Supplemental Brief, Dkt. No. 26, p. 1]

## II.   LEGAL STANDARD

To obtain a preliminary injunction, the moving party must
show: (1) a likelihood of success on the merits, (2) a likelihood
that the moving party will suffer irreparable harm, (3) that the
balance of equities weighs in the moving party's favor, and (4)

---

[2]  As comprehensively set forth in the Notice of Removal, the
parties are completely diverse (Notice of Removal ¶¶ 8-16) and
the amount in controversy exceeds the statutory minimum (id. ¶¶
17-25).

[3]  As set forth below, ripeness is a justiciability question,
and therefore the Court must, as it did in this case, raise the
issue *sua sponte*.  Nextel Commc'ns of Mid-Atl., Inc. v. City of
Margate, 305 F.3d 188, 192 (3d Cir. 2002) ("Ripeness is an issue
we must raise *sua sponte* if the parties do not raise it, and is
applicable to cases involving motions for preliminary
injunction.").

that injunctive relief is in the public interest.  <u>Winter v. Nat.</u>
<u>Res. Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008).  If the moving
party has established the first two "most critical" factors, <u>Nken</u>
<u>v. Holder</u>, 556 U.S. 418, 434 (2009), the court then performs a
"balancing of the factors," <u>Reilly v. City of Harrisburg</u>, 858
F.3d 173, 180 n.5 (3d Cir. 2017), to determine whether the
prongs, "taken together, balance in favor of granting the
requested preliminary relief," <u>id.</u> at 179.

"The court may issue a preliminary injunction only on notice
to the adverse party."  Fed. R. Civ. P. 65(a)(1).

**III. ANALYSIS**

   A. <u>**Ripeness**</u>

As very recently explained by the Third Circuit,

> Ripeness is a justiciability doctrine that derives from
> Article III of the United States Constitution. The
> function of the ripeness doctrine is to determine
> whether a party has brought an action prematurely. The
> doctrine counsels that we should abstain until such time
> as a dispute is sufficiently concrete to satisfy the
> constitutional and prudential requirements of the
> doctrine.  We have recognized the following
> considerations that underpin the ripeness doctrine:
>
>> [A]re the parties in a sufficiently adversarial
>> posture to be able to present their positions
>> vigorously; are the facts of the case
>> sufficiently developed to provide the court with
>> enough information on which to decide the matter
>> conclusively; and is a party genuinely aggrieved
>> so as to avoid expenditure of judicial resources
>> on matters which have caused harm to no one.
>
> At bottom, the doctrine is inextricably tied to Article
> III's requirement of a case or controversy. It requires
> that the challenge grow out of a real, substantial

controversy between parties involving a dispute definite
and concrete.

Jie Fang v. Dir. United States Immigration & Customs Enf't, 2019
WL 3820463 at *10 (3d Cir. Aug. 15, 2019) (internal citations and
quotations omitted).[4]

Ripeness questions frequently arise in declaratory judgment
actions.[5]  While "[t]he contours of the ripeness doctrine are
particularly difficult to define with precision when a party
seeks a declaratory judgment," a declaratory judgment action is
ripe for adjudication if: (1) the parties' interests are
sufficiently "adverse"; (2) the judgment of the court will be
"conclusive"; and (3) that judgment will have "practical
utility."  Wayne Land & Mineral Grp. LLC v. Delaware River Basin
Comm'n, 894 F.3d 509, 522 (3d Cir. 2018).

The parties agree that this case is ripe for adjudication.
While the parties' agreement is, of course, not binding on this
Court, after independently considering the question, the Court

---

[4]  Fang was issued after the parties' supplemental briefing
was completed.  However, Fang does not depart from previously
established law concerning ripeness, see infra, and so the Court
concludes that additional briefing to address Fang is not
necessary.

[5]  See 1937 Advisory Committee Note to Fed. R. Civ. P. 57,
"Declaratory Judgment" ("A declaratory judgment is appropriate
when it will terminate the controversy[.] . . . The controversy
must necessarily be 'of a justiciable nature, thus excluding an
advisory decree on a hypothetical state of facts.'")(quoting
Ashwander v. Tennessee Valley Auth., 297 U.S. 288 (1936)).

agrees that this case is ripe for review.  The issue is whether the undisputed fact that Cherry Hill Towne Center has not even *applied* for a sports wagering license (and therefore also has not been *granted* such a license) renders its claim for declaratory relief, and attendant final injunctive relief enforcing the declaration[6], unripe.  The Court addresses the three prongs of ripeness--adversity, conclusiveness, and practical utility-- in reverse order.

### (1)  <u>Practical utility</u>

The fundamental utility question is: in the absence of a license to conduct sports wagering at the subject property, of what practical utility will a declaratory judgment be to Cherry Hill Towne Center?  Hypothetically, if this Court were to grant the relief Cherry Hill Towne Center seeks, how would that judgment help Cherry Hill Towne Center when Cherry Hill Towne Center still would not be in a position to conduct sports wagering anytime in the near future because it has not yet applied for a sports wagering license?

Cherry Hill Towne Center has satisfactorily answered these questions by explaining that "[a] declaration of rights in this case will alleviate legal uncertainty and could potentially have

---

[6]  This type of final remedy is distinct from the provisional preliminary injunctive relief sought by GSPR.  The significance of the absence of a sports wagering license in the irreparable harm analysis is discussed separately below.

a significant impact on Plaintiff's plan to open and operate a
sports wagering facility.  For instance, if the Court concludes
that the Declaration is enforceable, Plaintiff may be forced to
abandon" its plans to apply for a sports wagering license.
[Supplemental Brief, Dkt. No. 24, p. 4-5][7]  Thus, while Cherry
Hill Towne Center appears not to dispute that a declaratory
judgment in its favor, alone, will not help it open and operate a
sports wagering facility (because a sports wagering license would
still be needed), it has persuaded this Court that a declaratory
judgment will help it make a significant business decision:
whether to undertake the time and expense necessarily involved in
applying for a sports wagering license.  Therefore, a declaratory
judgment in this case will have practical utility.  See <u>Wayne
Land & Mineral Grp.</u>, 894 F.3d at 524 ("In the context of the
Declaratory Judgment Act, utility exists when the judgment would
materially affect the parties and serve to clarify legal
relationships so that plaintiffs can make responsible decisions
about the future.").

   **(2)  <u>Conclusiveness</u>**

      "A claim is fit for adjudication if a declaratory judgment
would in fact determine the parties' rights, as distinguished

---

      [7]  Cherry Hill Towne Center's most recent brief, filed August
12, 2019, states that Cherry Hill Towne Center "intends [to apply
for a sports wagering license] as soon as possible."
[Supplemental Brief, Dkt. No. 26, p. 1]

from an advisory opinion based on a hypothetical set of facts. Cases presenting predominately legal questions are particularly amenable to a conclusive determination." Wayne Land & Mineral Grp., 894 F.3d at 523.[8]  The parties and the Court are all in agreement that the enforceability of the Restrictive Covenant is a predominantly legal issue that will not be affected by subsequent factual developments.  Accordingly, the Court concludes that a declaratory judgment will conclusively determine the enforceability of the Restrictive Covenant.

**(3)   Adversity of interests**

Lastly, there can be little doubt that the parties' interests are adverse.  Even putting aside the parties' vigorous litigation to date and their unsuccessful court-ordered mediation, the adversity of interests is apparent.  By operation of the Sports Wagering Act, Cherry Hill Towne Center, after obtaining the requisite license, could open a sports wagering facility on the GSP Property but for the interest held by GSPR, which reserves that right to operate "wagering activities and gambling and gaming of any sort" exclusively to GSPR.  That is, either GSPR or Cherry Hill Towne Center has the right to operate sports wagering (with the appropriate license) but not both.

---

[8]  See also, 1937 Advisory Committee Note to Fed. R. Civ. P. 57, "Declaratory Judgment" ("Written instruments . . . may be construed before or after breach at the petition of the properly interested party.").

Accordingly, the Court holds that all three prongs of the ripeness test have been established and this case is justiciable.

**B.  Preliminary Injunctive Relief**

GSPR seeks an injunction preventing Cherry Hill Towne Center "from and against opening and operating a sports wagering lounge or engaging in the business of sports wagering at or within the GSP Property."  [Proposed Preliminary Injunction Order, Dkt. No. 17-9, p. 1]

**(1)  Likelihood of success on the merits**

Under New Jersey law, a restrictive covenant is enforceable if it is reasonable.  Davidson Bros. v. D. Katz & Sons, Inc., 121 N.J. 196, 211 (1990).  In determining reasonableness, the court considers:

> 1. The intention of the parties when the covenant was executed, and whether the parties had a viable purpose which did not at the time interfere with existing commercial laws, such as antitrust laws, or public policy.
>
> 2. Whether the covenant had an impact on the considerations exchanged when the covenant was originally executed.  This may provide a measure of the value to the parties of the covenant at the time.
>
> 3. Whether the covenant clearly and expressly sets forth the restrictions.
>
> 4. Whether the covenant was in writing, recorded, and if so, whether the subsequent grantee had actual notice of the covenant.
>
> 5. Whether the covenant is reasonable concerning area, time or duration. . . .

6.   Whether   the   covenant   imposes   an   unreasonable
restraint  on  trade  or  secures  a  monopoly  for  the
covenantor.   This may be the case in areas where there
is limited space available to conduct certain business
activities and a covenant not to compete burdens all or
most available locales to prevent them from competing in
such an activity.

7.  Whether  the  covenant  interferes  with  the  public
interest.

8. Whether, even if the covenant was reasonable at the
time it was executed, changed circumstances now make the
covenant unreasonable.

Id. at 211-12 (internal citations and quotations omitted).  The
Court considers each factor in turn.

    As to the intention of the parties, the Court begins with
the language of the covenant: "Horse racing, simulcasting, off-
track betting, wagering activities and gambling and gaming of any
sort (collectively, 'Gaming') anywhere on the GSP Property at any
time by any party other than GSPR and its successors and
assignees is hereby prohibited ('Covenant')." (Rivera-Soto Cert.
Ex. C)  GSPR asserts that the intention is clear; "wagering
activities and gambling and gaming of any sort" unambiguously
includes sports wagering, and so no one "other than GSPR and its
successors and assignees" may conduct sports wagering on the
property.

    Cherry Hill Towne Center disagrees.  According to Cherry
Hill Towne Center, "[t]here is no mention of sports wagering at
all" and the "phrase 'wagering activities and gambling and gaming
of any sort'" is "overly broad."  [Opposition Brief, Dkt. No. 18,

12

p. 12]  Thus, Cherry Hill Towne Center reasons, sports wagering
is not encompassed by the covenant.  Further, Cherry Hill Towne
Center posits that "[i]t is highly unlikely that the parties
intended to restrict sports wagering because it was unlawful" in
1999 when the parties entered into the covenant.  [Id. at p. 14]

The Court finds the covenant unambiguous and not overly
broad.  The covenant can only mean exactly what it says.
"[W]agering activities . . . of any sort" must include sports
wagering, because sports wagering is a "sort" of wagering.
Moreover, Cherry Hill Towne Center's argument concerning the
legal context in which the covenant was made-- i.e., that sports
wagering was illegal at the time, therefore the parties could not
have intended to reserve to GSPR a right to conduct an activity
that was outlawed-- cannot overcome the plain language of the
covenant itself.[9]  Thus, the Court holds that the first factor
weighs in favor of reasonableness.

With regard to the considerations exchanged, GSPR relies on
the language immediately preceding the covenant, which states,

---

[9]  The fact that a law prohibiting certain activities is "on
the books" of course does not mean that such activities do not
take place, nor that certain parties might not bet on the law
changing in the future.  That is, there is a significant
analytical difference between arguing that the parties could not
have contemplated an activity because that activity was a *factual*
impossibility (an argument which Cherry Hill Towne Center does
not, and cannot, make) and arguing, as Cherry Hill Towne Center
does, that the parties could not have intended to allow an
activity that was certainly possible, just not legal, at the time
of the parties' agreement.

"NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by Declarant, and intending to be legally bound hereby, Declarant declares as follows:" (Rivera-Soto Cert. Ex. C)  Cherry Hill Towne Center responds that this statement is conclusory, and observes that "Defendants have failed to provide any evidence that the covenant actually had an impact on the considerations exchanged." [Opposition Brief, Dkt. No. 18, p. 14]  GSPR makes no argument in reply.  The Court finds that the recital preceding the covenant is *some* evidence of the covenant having impacted the considerations exchanged, and therefore the Court concludes that this factor weighs slightly in favor of reasonableness.

With regard to the clarity of the covenant, the parties reiterate their arguments concerning the intent of the parties; GSPR asserts the covenant is clear, Cherry Hill Towne Center asserts that it is ambiguous.  For the reasons set forth above, the Court finds the covenant unambiguous and clear.[10]  Therefore, the Court holds that this factor weighs in favor of reasonableness.

The parties do not dispute that the covenant was in writing and was recorded.  Thus, this factor weighs in favor of reasonableness.

---

[10]  The Court agrees with GSPR's observation that Cherry Hill Towne Center's argument "conflat[es] breadth with ambiguity." [Reply Brief, Dkt. No. 19, p. 4]

As to the area and duration of the covenant, GSPR emphasizes the area component, which is limited solely to the GSP Property and is therefore narrow.  Cherry Hill Towne Center does not dispute the area component; rather, it emphasizes the duration component of the covenant which, by its very terms, "remain[s] in effect forever." [Rivera-Soto Cert. Ex. C]  The Court finds that the narrow geographic coverage of the covenant somewhat mitigates the lengthy duration of the covenant such that this factor weighs only somewhat against reasonableness.

GSPR argues that the covenant is not an unreasonable restraint on trade, even though the covenant reserves all gaming activities on the property in favor of GSPR.  Cherry Hill Towne Center vigorously disagrees.  It relies on the undisputed fact that, other than Atlantic City Casinos and the GSP Property, there are only four other possible locations for sports wagering in New Jersey.  The flaw in Cherry Hill Towne Center's argument however, is that the other options for operating sports wagering are limited not by the covenant, but rather by the Sports Wagering Act, which-- as Cherry Hill Towne Center emphasizes-- was not even contemplated at the time the parties entered into the covenant.  Thus, it is not the covenant itself that creates the limited market for sports wagering; nor is it even the combined effect of the covenant and the law at the time the

covenant was entered into[11] that creates the limited market.  The
inquiry is whether "*the covenant* imposes an unreasonable
restraint on trade or secures a monopoly for the covenantor."
<u>Davidson Bros</u>, 121 N.J. at 211.  The covenant at issue in this
case does not.

Prior to the passage of the Sports Wagering Act, sports
wagering was not allowed anywhere in New Jersey.  After the Act
was passed-- 19 years after the parties entered into the
Restrictive Covenant-- Cherry Hill Towne Center found itself in
the fortunate position of being located on a former racetrack,
and therefore eligible to apply for a sports wagering license.
Cherry Hill Towne Center now seeks to profit from that
happenstance, except that the Restrictive Covenant prevents it
from doing so.  Under the facts and circumstances of this case,
the Court does not find that the covenant itself unreasonably
restrains trade.  The covenant does not "burden all or most
available locales to prevent them from competing in" sports
wagering, <u>Davidson Bros.</u>, 121 N.J. at 211.  Rather, it only
burdens the GSP Property, therefore the Court holds that this
factor does not weigh against reasonableness.

---

[11]    <u>Davidson Bros.</u> instructs that, except as to the last
factor (changed circumstances), the relevant timeframe for
determining reasonableness is the time at which the covenant was
entered into. 121 N.J. at 211-12.

Cherry Hill Towne Center next asserts that the covenant "directly interferes with [New Jersey's] expressed public interest of legalizing sports wagering." [Opposition Brief, Dkt. No. 18, p. 20]  The Court is unpersuaded that the covenant substantially interferes with sports wagering in New Jersey for at least two reasons.  First, the covenant only concerns a single parcel of land in the entire state and so cannot significantly impact state-wide sports wagering.  Second, the covenant does not prohibit sports wagering on the GSP Property; indeed, it expressly allows sports wagering so long as it is conducted by GSPR.  Thus, the Court holds that the covenant does not interfere with the public interest, therefore this factor does not weigh against reasonableness.

Lastly, Cherry Hill Towne Center argues that even if the covenant was, at one time, reasonable, circumstances have since changed such that continuing to enforce the covenant would be unreasonable.  According to Cherry Hill Towne Center, the passage of the Sports Wagering Act has "increased the burden" that the covenant places on Cherry Hill Towne Center's property. [Opposition Brief, Dkt. No. 18, p. 21]  The Court disagrees.  The changed circumstances have not resulted in any burden on Cherry Hill Towne Center.  Before the Sports Wagering Act, Cherry Hill Towne Center could not conduct sports wagering on its property, and after the Act, it still cannot conduct sports wagering.  As

explained above, the covenant merely prevents Cherry Hill Towne
Center from taking advantage of a new opportunity that only
exists because Cherry Hill Towne Center's "bustling commercial
and residential area" [Opposition Brief, Dkt. No. 18, p. 21]
happens to be located on a former racetrack.  Thus, the Court
does not find that changed circumstances now make the covenant
unreasonable.

In conclusion, having considered and weighed all of the
Davidson Bros. factors, the Court holds that GSPR has
demonstrated that it will likely prevail on the merits of this
declaratory judgment suit concerning the enforceability of the
Restrictive Covenant.

**(2)   <u>Immediate irreparable harm</u>**

As this Court eluded to above, <u>see</u> <u>supra</u>. note 6, the fact
that Cherry Hill Towne Center has yet to even apply for a sports
wagering license plays a crucial part in the irreparable harm
analysis.  Third Circuit law is clear: "[e]stablishing a risk of
irreparable harm is not enough.  A [moving party] has the burden
of proving a 'clear showing of immediate irreparable injury.'"
<u>Campbell Soup Co. v. ConAgra, Inc.</u>, 977 F.2d 86, 91 (3d Cir.
1992) (quoting <u>ECRI v. McGraw-Hill, Inc.</u>, 809 F.2d 223, 226 (3d
Cir. 1987)).  "'Injunctions will not be issued merely to allay
the fears and apprehensions or to sooth the anxieties of the
parties.  Nor will an injunction be issued to restrain one from

doing what he is not attempting and does not intend to do.'" <u>Id.</u> at 92 (quoting <u>Continental Group, Inc. v. Amoco Chems. Corp.</u>, 614 F.2d 351, 359 (3d Cir. 1980)).[12]

Although Cherry Hill Towne Center states it "is actively pursuing a sports book at Garden State Park" [Supplemental Brief, Dkt. No. 24, p. 2], there can be no dispute that Cherry Hill Towne Center will not be "opening and operating a sports wagering lounge or engaging in the business of sports wagering at or within the GSP Property" [Proposed Preliminary Injunction Order, Dkt. No. 17-9, p. 1], anytime in the immediate future because Cherry Hill Towne Center has not even begun the licensing process.  Thus, a preliminary injunction to prevent Cherry Hill Towne Center from engaging in the business of sports wagering is unnecessary at this time.  Accordingly, the Court declines to issue, at this time, the preliminary injunction GSPR seeks.[13]

---

[12]   The Court also will not, in the absence of any immediate need, entertain a preliminary injunction motion simply as a means to a speedier adjudication of the parties' dispute.  Particularly in declaratory judgment actions, the Federal Rules of Civil Procedure provide a separate procedural vehicle for obtaining an expeditious decision on the merits.  <u>See</u> Fed. R. Civ. P. 57 ("The Court may order a speedy hearing of a declaratory-judgment action."; <u>see</u> <u>generally</u>, 10B Federal Practice and Procedure, § 2768 (4th ed.), "Procedure in Declaratory Actions" ("The provision of Rule 57 that the court 'may order a speedy hearing of a declaratory-judgment action,' is so sensible and appropriate that there is a dearth of decided cases involving that provision. Nevertheless it has been applied to effectuate the purpose of the rule and expedite a decision.").

[13]   Because GSPR has failed to establish the irreparable harm prong (prong 2), the Court does not proceed to consider the third

**IV.   CONCLUSION**

For the foregoing reasons, the Court will deny Defendants'
Motion for Preliminary Injunctive Relief.  An appropriate Order
shall issue on this date.


Dated: September 4, 2019                ___ s/ Renée Marie Bumb _____
                                       RENÉE MARIE BUMB
                                       UNITED STATES DISTRICT JUDGE

---

and forth prongs of the preliminary injunction analysis.  Reilly,
858 F.3d at 180.  However, the Court notes that as to the public
interest prong of the preliminary injunction analysis (prong 3),
Cherry Hill Towne Center reiterates the public interest argument
that it makes within the Davidson Bros. merits analysis.  The
Court rejects this argument for the reasons explained above.
Further, the Court's ruling that the Restrictive Covenant is
likely reasonable also severely undercuts Cherry Hill Towne
Center's argument that it would be unfairly prejudiced by
enforcing the covenant for which it bargained (prong 4).